UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA | **DECISION**<br>**and**<br>**ORDER** |
| v. |  |
| CHIRAN J. KANTIPULY, | **06-CR-065E(F)** |
| Defendant. |  |

_____

APPEARANCES:          CHIRAN J. KANTIPULY, *Pro Se*
                      Niagara County Jail
                      P.O. Box 496
                      Lockport, NY 14095

                      TERRANCE P. FLYNN
                      UNITED STATES ATTORNEY
                      Attorney for the Government
                      TRINI E. ROSS
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202

## JURISDICTION

This case was referred to the undersigned by Honorable John T. Elfvin on March 24, 2006 for all pretrial matters including report and recommendation on dispositive motions.  The matter is presently before the court on Defendant's omnibus motion for discovery (Docket Item No. 31), filed May 26, 2006.[1]

_____

[1]  Defendant's motion (Doc. No. 31) also contains requests for dispositive relief, which are addressed in a separate Report and Recommendation filed with this Decision and Order.

**BACKGROUND and FACTS**[2]

Defendant Chiran J. Kantipuly ("Defendant" or "Kantipuly"), a United States

Citizen born in India, was charged in a criminal complaint ("Complaint") (Doc. No. 1),

dated October 12, 2005, with violating 18 U.S.C. §§ 371, 1341 and 1343 by conspiring

to commit offenses against or to defraud the United States through mail fraud and wire

fraud, based on acts allegedly occurring between January 1999 and August 2003 in

which Defendant devised a scheme to obtain money from Niagara Mohawk Power

Company ("Niagara Mohawk") through false pretenses.  Attached to the Complaint is

the Affidavit of Federal Bureau of Investigations ("FBI") Special Agent Francis J.

Carden, III ("Agent Carden") in Support of Criminal Complaint ("Agent Carden Affidavit').

On October 12, 2005, the undersigned issued a warrant for Defendant's arrest for

conspiring to commit mail fraud ("the arrest warrant") (Doc. No. 4).

Defendant was arrested pursuant to said arrest warrant on October 14, 2005

while attempted to cross from Canada into the United States at the Rainbow Bridge[3] in

Niagara Falls.  Specifically, upon submitting to the primary inspection area for routine

border inspection, United States Customs and Border Protection ("CBP") Officers Dana

F. Pelletier ("Officer Pelletier") observed that the name listed on Defendant's United

States Passport matched a name on a "lookout sheet" posted in the primary inspection

---

[2] The Facts statement is taken from the pleadings and motion papers in this action.

[3] Although Defendant states in papers submitted in support of the motion that he was arrested "while attempting to enter the United States at the Peace Bridge Point of Entry," Marchese Affirmation § 25, the record establishes that Defendant was arrested at the Rainbow Bridge.  See Statements of Officers Pelletier and Gray, and Narrative Summary of Arrest, attached respectively as Exhs. A, B and D to Government's Supplemental Response.  As such, the court construes Defendant's reference to the Peace Bridge as an error.  Significantly, whether Defendant's arrest occurred at the Peace Bridge or the Rainbow Bridge is not relevant to the resolution of the instant motion.

area.  Officer Pelletier called for assistance, which was provided by CBP Officers Gray and McCarthy who patted down Defendant, searched the trunk of Defendant's vehicle, and escorted Defendant to a detention room located in the secondary inspection area. Officer Pelletier moved Defendant's vehicle from the primary inspection area and parked it in a garage in the secondary inspection area.  Upon determining that Defendant was the subject of an outstanding federal arrest warrant, Officers Gray and McCarthy contacted the Federal Bureau of Investigation ("the FBI") and FBI Special Agent Francis J. Carden, III ("Agent Carden"), responded and read Defendant his *Miranda* warning.  A briefcase seized from Defendant's vehicle contained records pertaining to various bank accounts.  The documents were turned over to the FBI, Internal Revenue Service ("IRS") and Environmental Protection Agency ("EPA"), and were subsequently inventoried by the FBI for evidence.

On February 16, 2006, a 128-count indictment ("the Indictment") (Doc. No. 15 was returned, charging Defendant with one count of conspiring with Frank J. Grabowski ("Grabowski")[4] to defraud the United States in violation of 18 U.S.C. § 371 (Count 1), 50 counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2 through 51), and 77 counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 42 through 178).  In particular, Defendant was the sole owner of Kanti Technologies ("Kanti"), a laboratory with two locations in Amherst, New York and one in Tonawanda, New York that

---

[4] On September 2, 2005, Grabowski pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and agreed to cooperate with the Government by providing complete and truthful information regarding Grabowski's knowledge of any criminal activity undertaken by Grabowski or others involving any scheme to defraud Niagara Mohawk, in exchange for the Government's agreement not to prosecute Grabowski as to any such scheme.  *See* Plea Agreement attached as Exh. A to Complaint.  Although named in the Indictment as a co-conspirator, Grabowski is not a co-defendant.

performed chemical analysis of soil and oil samples.  Kanti contracted with Niagara

Mohawk, a utility service company, to perform laboratory analysis of samples provided

to Kanti by Niagara Mohawk.  In 1995, co-conspirator Frank Grabowski, a Niagara

Mohawk employee from 1973 through 2003, was assigned to process and approve

invoices submitted to Niagara Mohawk by Kanti and which were, beginning in 1999,

prepared by Defendant.[5]  The Indictment alleges that commencing in 1999 and

continuing into September 2003, Defendant occasionally submitted invoices to Niagara

Mohawk for work that was not performed and products not delivered.  Defendant would

pay Grabowski for information about various Niagara Mohawk projects for which

Defendant would submit invoices for work that was never performed, and Grabowski

would arrange for the payment of such invoices.

On May 26, 2006, May 26, 2006, Defendant filed his Pre-Trial Omnibus Motion

(Doc. No. 31), seeking both dispositive and non-dispositive relief ("Defendant's

Motion").[6]  In particular, Defendant seeks exculpatory evidence pursuant to *Brady v.*

*Maryland*, 373 U.S. 83 (1963) ("*Brady* material"), disclosure of the Grand Jury minutes

for Defendant's inspection to determine the sufficiency of the evidence, discovery

pursuant to Fed. R. Crim. P. 16, a list of witnesses to be called at trial, and a bill of

particulars.  Defendant's Motion is supported by the attached Affirmation of Charles J.

---

[5] Previously, such invoices were prepared by a Kanti office employee who is not a defendant in this case.  Indictment ¶ 18.

[6] According to a Docket "Remark" dated May 26, 2006, Defendant's Motion was originally inadvertently electronically filed in the wrong proceeding and, on July 20, 2006, Defendant's Motion was scanned and docketed in the correct proceeding.

Marchese, Esq. ("Marchese Affirmation").[7]   On June 16, 2006, the Government filed its

Response to Defendant's Notice of Motion and Government's Demand for Discovery

and Inspection ("Government's Response") (Doc. No. 25).   The Government also

requests reciprocal discovery pursuant to Fed. R. Crim. P. 16(s).   Government's

Response at 24-25.   Oral argument was conducted on August 24, 2006.

Based on the following, Defendant's motion for discovery is GRANTED in part,

DENIED in part and DISMISSED in part; the Government's request for reciprocal

discovery is GRANTED.


## DISCUSSION

### 1.   *Brady* Material

Defendant seeks "immediate" pretrial disclosure of exculpatory *Brady* material

pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (hereinafter "*Brady*").   Marchese

Affirmation ¶¶ 4-7.   The Government maintains that it is not in possession of any such

material, but acknowledges its obligation to provide such material and states it intends

to comply with its obligations under *Brady* and its progeny.   Government's Response at

2-4.

*Brady* and its progeny require the prosecution provide the defense with any

evidence favorable to the accused where the evidence is material to guilt or

punishment.   "Favorable evidence includes not only evidence that tends to exculpate

the accused, but also evidence that is useful to impeach the credibility of a government

---

[7] Mr. Marchese, whom Defendant retained, was terminated as Defendant's attorney on June 13, 2006.  On September 29, 2006, Defendant was permitted to proceed *pro se*.

witness." *United States v. Coppa (In re United States)*, 267 F.3d 132, 139 (2d Cir. 2001) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding the defense is entitled to pertinent evidence regarding a material witness's credibility or reliability, including evidence of any agreement or promises of leniency between the government and a government witness)).  For example, the government's failure to reveal evidence of an understanding in return for testimony will violate due process.  *United States v. Pfingst*, 477 F.2d 177 (2d Cir. 1973);  *United States v. Feola*, 651 F.Supp. 1068, 1135 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir.) (Table), *cert. denied*, 493 U.S. 834 (1989).

There is, however, no absolute right to pretrial discovery of *Brady* material. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  Rather, the prosecution must disclose such evidence "in a timely matter to assure a fair trial," and should not postpone the disclosure of *Brady* material until it is too late for effective use at trial. *Coppa*, *supra*, at 144 ("there is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial.").

Although *Brady* does not authorize a general right of pretrial discovery and primarily seeks to avoid unfair trials resulting from suppression of exculpatory material, courts nonetheless have ordered pretrial disclosure of *Brady* material.  *United States v. Taylor*, 707 F.Supp. 696, 703  (S.D.N.Y. 1989) (ordering disclosure of *Brady* materials one week prior to trial, except that impeachment materials pertaining to government witnesses should be disclosed the day before that witness will take the stand); *United States v. Biaggi*, 675 F.Supp. 790 (S.D.N.Y. 1987) (disclosure of *Brady* materials at the

same time as disclosure of **Jencks Act** materials; *Feola*, *supra*, (disclosure thirty days prior to trial).  The Second Circuit has observed that the timing of disclosure of material under *Brady* depends "upon the anticipated remedy for a violation of the obligation to disclose: the prosecutor must disclose 'material' . . . exculpatory and impeachment information no later than the point in which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made." *Coppa*, *supra*, at 142.  Linking the scope of *Brady*'s disclosure obligation to the remedy for its breach creates a burden for the prosecutor who must determine "the significance of the undisclosed evidence in light of the strength of all the evidence indicating guilt." *Id.* at 143.  As such, "a prosecutor 'anxious about tacking too close to the wind will disclose a favorable piece of evidence.'" *Id.* at 143 (quoting *Kyles v. Whitley*, 514 U.S. 419, 439 (1995)).

Given that the Government has indicated its intention to disclose all *Brady* exculpatory, the Government is reminded of its duty to timely provide such information at the risk of depriving Defendant of due process of law, requiring a reversal of any conviction obtained.  Defendant's motion, insofar as it seeks disclosure of exculpatory material under *Brady* and its progeny, is DISMISSED as moot.

**2.      Grand Jury Minutes**

Defendant seeks disclosure of the Grand Jury minutes to enable Defendant to determine whether sufficient information was presented to the Grand Jury to sustain the Indictment.  Marchese Affirmation ¶¶ 8-12.  For example, Defendant maintains that the Grand Jury minutes will reveal whether the Grand Jury evidence consisted of a

7

summary presented by a witness without personal knowledge of the circumstances, or was hearsay. *Id*. ¶¶ 9-10. The Government argues in opposition that Defendant has failed to demonstrate the requisite "particularized need" for such information so as to overcome the presumption that the Grand Jury acted within the legitimate scope of its authority. Government's Response at 4. The Government further maintains that hearsay is admissible in Grand Jury proceedings. *Id*. at 5.

The grand jury exists not to determine guilt or innocence, but to assess whether there is an adequate basis for bringing a criminal charge. *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972). As such, "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." *Costello v. United States*, 350 U.S. 359, 364 (1956) (declining to enforce the hearsay rule in grand jury proceedings as to do so "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules"). "A grand jury is neither an officer nor an agent of the United States, but a part of the court." *Falter v. United States*, 23 F.2d 420, 425 (2d Cir.), *cert. denied*, 277 U.S. 590 (1928). However, to ensure a grand jury's independence, a court has limited supervisory authority over the grand jury. *United States v. Williams*, 504 U.S. 36, 46-47 (1992).

Any power which a federal court may have over a grand jury is highly circumscribed, not "remotely comparable" to the power which state courts maintain over their own proceedings. *Williams*, *supra*, at 50. In *Williams*, the Court went beyond *Costello*, *supra*, holding that a challenge to the sufficiency of the grand jury evidence,

recast as a claim that the prosecutor's presentation was incomplete or misleading, would be an insufficient ground to require dismissal of an indictment. *Williams*, *supra*, at 54.

Grand jury proceedings are to be kept secret and the nature or substance of any grand jury proceeding may be disclosed only pursuant to a written court order. Fed. R. Crim. P. 6(e). Further, grand jury proceedings carry a presumption of regularity. *Hamling v. United States*, 418 U.S. 87, 139-40 (1974). A review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct. *See United States v. Torres*, 901 F.2d 205, 232-33 (2d Cir. 1990); *United States v. Wilson*, 565 F.Supp. 1416, 1436-37 (S.D.N.Y. 1983) (denying inspection of the grand jury minutes where defense counsel agreed that "a certain degree of discovery is necessary in order to fully verify and document these federal and state grievances and it is imperative that certain information be supplied to the defense, which is essential to mounting and successfully advancing this legal attack"). The secrecy of the grand jury will not be compromised by an order to disclose grand jury minutes without a showing of "particularized need." *Dennis v. United States*, 384 U.S. 855, 871-72 (1966).

The Supreme Court has held that an indictment voted by a federal grand jury may not be challenged on the ground that it is supported by inadequate or incompetent evidence. *Costello*, *supra*, at 363. Nor will a mere request to inspect the grand jury minutes, unsupported by a statement of facts indicating insufficiency of the evidence, enough to require inspection of the minutes. *United States v. Weber*, 197 F.3d 237, 238 (2d Cir. 1957). *See United States v. Moran*, 349 F.Supp.2d 425, 474 (N.D.N.Y. 2005) (holding defendant moving to inspect grand jury minutes must specific, credible

evidence from which a court could determine that insufficient evidence was presented to

the grand jury); *United States v. Barber*, 839 F.Supp. 193, 194 (W.D.N.Y. 1993) (holding

defendant not entitled to inspect grand jury minutes in absence of any factual showing

of government misconduct and defense counsel's unsupported view that abuses may

have occurred before the grand jury was insufficient to overcome presumption of grand

jury proceedings' regularity so as to justify disturbing traditional secrecy surrounding

such proceedings); *United States v. Olin Corp.*, 465 F.Supp. 1120, 1127 n. 5 (W.D.N.Y.

1979) (holding unsupported suspicions of grand jury abuse by the prosecution did not

justify disturbing the secrecy of the grand jury's proceedings and, absent any evidentiary

showing of grand jury abuse, disclosure would not be granted).

       In the instant case, Defendant's assertion that evidence presented to the Grand

Jury which returned the Indictment was insufficient does not warrant dismissal of the

Indictment under federal law.  *Weber*, *supra*, at 238; *Moran*, *supra*, at 474; *Barber*,

*supra*, at 194 .  As such, Defendant has failed to establish the requisite "particularized

need" to compel disclosure of the Grand Jury minutes and his request for such is,

therefore, DENIED.


**3.      Rule 16 Discovery**

       Defendant seeks discovery pursuant to Fed. R. Crim. P. 16 of various items.

Marchese Affirmation ¶ 13a-j.  Defendant cites no other legal authority for any of the ten

separate categories of discovery requested.  The Government maintains it has complied

with discover pursuant to Rule 16, providing "complete, unfettered access to virtually all

of its evidence and has provided [defense] counsel with the opportunity to review all the

documents provided by National Grid (formerly Niagara Mohawk) regarding the

investigation."  Government's Response at 6 (bracketed text added).  Nevertheless, as

discussed *infra*, the Government has not provided Defendant with material pursuant to

18 U.S.C. § 3500 ("the **Jencks Act")**, Grand Jury testimony or attorney work product.

*Id.*

> **A.** **Identity of all witnesses and persons having some knowledge of the facts of this case.**

Defendant seeks the names and addresses of all persons with knowledge of this

case.  Marchese Affirmation ¶ 13f.  Further, by requesting statements by all witnesses

interviewed by the Government, regardless of whether the Government intends to call

such persons to testify at trial, *Id.* ¶ 13a, as well as any letters, statements, memoranda,

audit reports and summaries made by any National Grid employee or agent to any

federal agent in connection with the subject matter of this case, *Id.* ¶ 13b, Defendant

also impliedly requests the identity of such persons.  The Government opposes this

request as outside the scope of Fed. R. Crim. P. 16.  Government's Response at 10.

Further, although the Government acknowledges it is within the court's discretion to

order the Government to disclose a witness list prior to trial where the witness makes a

significant showing of need for such information, the Government maintains that

Defendant has failed to make such a showing and, as such, the Government is not

required to disclose the identities of its trial witnesses prior to trial.  Government's

Response at 8.

Rule 16 does not require the government to furnish the names of witnesses prior

to trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990).  It is well established

that the district courts may, in their discretion, compel the government to identify its

witnesses.  *United States v. Cannone*, 528 F.2d 296, 301-302 (2d Cir. 1975).  However,

it is not an abuse of discretion for the court to refuse to compel such disclosure "in the

absence of 'a *specific* showing that disclosure was both material to the preparation of

[the] defense and reasonable in light of the circumstances surrounding [the] case.'"

*Bejasa, supra*, at 139-40 (quoting *Cannone, supra*, at 301 (emphasis in original)).

Additionally, absent a showing of undue hardship or prejudice, the confidentiality of

statements taken in preparation for trial has been upheld.  *International Business*

*Machines Corp. v. Edelstein*, 526 F.2d 37, 44 (2d Cir. 1975) (citing cases).  In the

instant case, Defendant has not established the requisite undue hardship or prejudice to

warrant disclosure of such information.  Moreover, the Government has made available

to the defense numerous records upon which it expects to establish its case making it

unlikely that Defendant can conceivably be unfairly surprised at trial.  Thus, Defendant's

request for pretrial identification of all witnesses whom the Government intends to call at

trial is DENIED.

As for Defendant's request for disclosure of the identity of any person having

knowledge of this case, Defendant has not cited any legal authority supporting such

request.  Nevertheless, the court broadly construes this request as seeking the identity

of any confidential informants who assisted the Government by providing information in

connection with the underlying investigation.

Substantial policy considerations pertaining to law enforcement techniques and

the administration of justice have been held to override the need for full disclosure to

defendants.  *Roviaro v. United States*, 353 U.S. 53, 59 (1957).  Defendants bear the

burden of establishing the need for disclosure and such need will be found only upon demonstrating that the absence of such disclosure will deprive the defendant of a fair trial. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983)(citing *Roviaro, supra*, at 60-61. Nevertheless, it is settled that the government is not required to disclose the identity of a confidential informant. *McCray v. Illinois*, 386 U.S. 300, 305 (1967); *Roviaro, supra*, at 59 (1957); *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997). Indeed, disclosure of the identity of confidential informants may be withheld to protect the anonymity of informants to ensure their personal safety, *Roviaro, supra*, or to secure the informant's continued cooperation in furnishing information regarding violations of law. *Fields, supra*, at 324. As it is permissible to withhold the identity of informants, it is equally permissible to withhold information from which such identity may be inferred and thus revealed. *Fields, supra*.

In determining whether disclosure is essential, courts are required to balance the public's interest in securing justice against the defendant's right to prepare a defense. *Roviaro, supra*, at 62. A confidential informant's identity or the contents of a communication must therefore be disclosed if such information is relevant or helpful to an accused's defense at trial. *Roviaro, supra*, at 60-61.

In the instant case, Defendant has fail to demonstrate how the identity of any informant's is materially necessary to his defense and, thus, has failed to meet his burden under *Roviaro, supra*. Accordingly, Defendant's motion, insofar as it requests that the Government disclose the identity of confidential informants, is DENIED.

**B.     Statements**

Defendant seeks disclosure of (1) all statements made by any persons

interviewed by the Government, regardless of whether the Government intends to call

such persons as witnesses at trial, Marchese Affirmation ¶ 13a, and (2) any letters,

statements, memoranda, audit reports and summaries made by any National Grid

employee or agent to any federal agent in connection with the subject matter of this

case, *Id*. ¶ 13b.  The Government maintains these requests are beyond the purview of

Rule 16, and that the Government is under no obligation to disclose the identities of its

trial witnesses prior to trial.  Government's Response at 7.  The Government further

characterizes the request as "extremely broad" and asserts that any such information

qualifies as attorney work product to which Defendant is not entitled.  Government's

Response at 8.  The Government further argues that such information is exempt from

disclosure under Fed. R. Crim. P. 16(a)(2).  *Id*.

The **Jencks Act** "permits disclosure of statements made by 'a witness called by

the United States [who] has testified on direct examination.'" *United States v. Jackson*,

345 F.3d 59, 76 (2d Cir. 2001) (quoting 18 U.S.C. § 3500(b)) (bracketed text in original).

The **Jencks Act** further "provides that 'no statement or report in the possession of the

United States which was made by a Government witness or prospective Government

witness . . . shall be the subject of . . . discovery . . . until said witness has testified on

direct examination in the trial of the case.'" *Jackson*, *supra* (quoting 18 U.S.C. §

3500(a)).  *See also* Fed. R. Crim. P. 26.2(a) (providing for disclosure "[a]fter a witness .

. . has testified on direct examination," of "any statement of the witness that is in [the

government's] possession and that relates to the subject matter of the witness's

14

testimony"). The **Jencks Act** thus "categorically concerns statements made by 'a witness . . . [who] has testified,' 18 U.S.C. § 3500(b), and it mandates disclosure only after 'said witness has testified on direct examination in the trial of the case,' 18 U.S.C. § 3500(a)." *Jackson, supra.*

As such, the **Jencks Act** does not mandate disclosure of statements made by any person who does not testify. *Id.* Further, the Second Circuit has specifically instructed that the District Court has no authority to require pretrial disclosure of **Jencks Act** material. *United States v. Scotti*, 47 F.3d 1237, 1249-50 (2d Cir. 1995) (denying pretrial production of **Jencks Act** material and citing *United States v. Sebastian*, 497 F.2d 1267, 1269-70 (2d Cir. 1974) (holding the court cannot compel pretrial production of **Jencks Act** material)).

Moreover, insofar as Defendant is requesting statements qualifying as **Jencks Act** material, *i.e.*, statements made by a person interviewed by the Government who is expected to be called to testify at trial, is DENIED insofar as Defendant seeks immediate disclosure of such statements, and DISMISSED as moot insofar as the Government has stated its intention to comply with its obligation under the **Jencks Act** as to such statements. However, as to statements made by persons interviewed by the Government, but who are not expected to testify at trial, as such statements do not qualify as **Jencks Act** material, and given Defendant's failure to demonstrate potential unfairness at trial unless such statements are provided, the motion is DENIED.

Further, the Government's argument in opposition to this request establishes the Government has construed the request as seeking any letters, statements, memoranda,

audits reports and summaries created internally by the Government based on reports made by National Grid employees or agents to Government agents, which the Government labels, correctly or not, "attorney work product."  Significantly, Rule 16(a)(2) exempts such information from disclosure.  *See United States v. Pfingst*, 490 F.2d 262, 274-75 n. 14 (2d Cir. 1973) (noting Rule 16 specifically exempts from discovery or inspection intraoffice memoranda, reports, and other internal Government documents made by Government agents in connection with the prosecution of the case).  Although the Government has construed this request as seeking information prepared internally by Government agents, a plain reading of the request establishes Defendant is actually requesting information prepared by persons outside the Government, specifically, National Grid employees or agents for the Government's use in investigating this case.  Government's Response at 8.  As such, the Government's argument that such information is attorney work product and, thus, is shielded from disclosure, is without merit, regardless of whether such doctrine applies to a criminal action.

Rather, such information is subject to disclosure only insofar as it may qualify as **Jencks Act** material as statements made by a testifying Government witness.  *See Jackson*, *supra*, at 76 (observing that the **Jencks Act** "provides that 'no statement *or report in the possession of the United States which was made by a Government witness or prospective Government witness* . . . shall be the subject of . . . discovery . . . until said witness has testified on direct examination in the trial of the case.'") (italics added) (quoting 18 U.S.C. § 3500(a)).  Defendant's request for such information is, thus, DENIED as to information which does not qualify as **Jencks Act** material.  Further, any

16

such information qualifying as **Jencks Act** material is not subject to disclosure until after the witness who provided such information testifies at trial.

Finally, even if the Government possesses documents or statements prepared solely by National Grid employees, in the absence of any showing by Defendants that such documents are material to his defense, or that it will be used by the Government as part of its case-in-chief, the request must be DENIED. *See* Fed. R. Crim. P. 16(a)(1)(E).


### C. Memoranda, summaries, reports and documents used by the Government in connection with this case

Defendant seeks disclosure of (1) any memoranda or summaries of any oral statements made by any person to any Government agent in connection with this case, regardless of whether such statement, if written, has been signed or otherwise approved by the witness or relates to the proposed subject matter of such witness's direct trial testimony, Marchese Affirmation ¶ 13c; (2) "[a]ny memoranda, documents or statements used by the United States Government during the investigation of this case," *id*. ¶ 13e; and (3) reports and memoranda either prepared by the Government or otherwise in connection with the investigation of this case. *Id*. ¶ 13h. The Government characterizes these requests as "extremely broad" and beyond the purview of both Rule 16 and the **Jencks Act**, asserting that such information is protected from disclosure by the work product doctrine. Government's Response at 8-10.

The Government provides no information in support of its assertion that the work product doctrine protects the requested information from disclosure. Rather, under Rule

16,  the Government must disclose any documents that are material to the preparation

of the defense, that the Government intends to use in its case-in-chief at trial, or that

was obtained or belongs to the defendant.  Fed. R. Crim. P. 16(a)(1)(E).  Such

requested information is not subject to disclosure, however, if it constitutes "reports,

memoranda or other internal government documents made by an attorney for the

government or other government agent in connection with investigating or prosecuting

the case."  Fed. R. Crim. P. 16(a)(2).  Nevertheless, the Supreme Court has held that a

writing prepared by a Government attorney relating to the subject matter of testimony by

the government witness, if the writing has been "signed or otherwise adopted or

approved" by the government witness, the writing qualifies as a witness's statement and

is producible as **Jencks Act** material and is not protected from disclosure by the work

product doctrine merely because a Government attorney interviewed the witness and

wrote the "statement."  *Goldberg v. United States*, 425 U.S. 94, 98-99 (1976).

In the instant case, given the complete absence of any indication by Defendant

that the requested reports and memoranda are not exempted from disclosure pursuant

to Rule 16(a)(2), the request is DENIED.


**D.      Transcripts of Grand Jury testimony regardless of whether the
Government intends to call the testifying witness at trial.**

Defendant demands the transcript of the Grand Jury testimony by any person

given during the Government's investigation of the subject matter of this case,

regardless of whether the Government intends to call such person to testify at trial.

Marchese Affirmation ¶ 13e.  The Government maintains it is under no obligation to

provide Defendant with such Grand Jury testimony and that to do so would violate Fed. R. Crim. P. 6(e)(2)(B)(vi) which prohibits disclosure of any matter occurring before a grand jury.  Government's Response at 9.  The Government further acknowledges its obligation regarding **Jencks Act** material, and states its intention to comply with the **Jencks Act**.  *Id*.

With regard to Defendant's request for grand jury statements, under the **Jencks Act**, 18 U.S.C. § 3500, the Government is obligated to provide a criminal defendant with the grand jury testimony of witnesses who testified at trial.  *United States v. Wong*, 78 F.3d 73, 83 (2d Cir. 1996).  However, motions for disclosure of such grand jury testimony must be made at a time reasonably proximate to the witnesses' direct examination, preferably immediately before, during or after testifying.  *United States v. Scotti*, 47 F.3d 1237, 1250 (2d Cir. 1995).  Accordingly, Defendant's request for transcripts of grand jury testimony by any witness other than Defendant is DENIED.


**E.     Criminal records of Government witnesses to be called at trial.**

Defendant seeks "[a] summary reflecting the criminal records of all persons the United States Government intends to call at trial.  Marchese Affirmation ¶ 13g.  The Government acknowledges that, under *Giglio v. United States*, 405 U.S. 150, 154-55 (1972), the Government is required to disclose "evidence that could be used to impeach government witnesses," and, thus, has agreed to provide Defendant with the criminal records of any person the Government intends to call during trial, prior to the testimony of such witness.  Government's Response at 10.  Accordingly, this request is DISMISSED as moot.

F.      **Written summary of testimony the Government intends to use pursuant to Fed. R. Evid. 702, 703 and 705 during the Government's presentation of its case in chief.**

Although the Government acknowledges Defendant's demand pursuant to Fed. R. Evid. 702, 703 and 705 for a written summary of any testimony that the Government intends to use, the Government asserts that it does not intend to call any expert witnesses at trial. Government's Response at 11. The Government also reserves its right to call an expert as a rebuttal witness, depending on the evidence Defendant presents at trial. *Id*. Finally, the Government maintains that although it expects to call National Grid employees as trial witnesses regarding the information contained in the Indictment, and although such witnesses may have some special experience and knowledge based on their employment with National Grid, the witnesses will be called as fact, rather than expert, witnesses. *Id*.

Fed. R. Crim. P. 16(a)(1)(G) requires the Government to provide, at the Defendant's request, a written summary of any testimony the Government intends to use under Fed. R. Evid. 702, 703 or 705. Based on the Government's asserted intention to fully comply with this requirement, Defendant's motion for disclosure of such evidence is DISMISSED as moot.

G.      **List of all physical evidence seized from Defendant by the Government together with the results of any scientific tests performed on such items.**

The Government agrees to provide Defendant with a log of all items seized from Defendant. Government's Response at 12. The Government further asserts that no physical or scientific tests have been performed on any such evidence. *Id*. Defendant

does not challenge this assertion.  Accordingly, Defendant's motion is, on this ground, DISMISSED as moot.

4.      **Identity of Government Witnesses**

Defendant seeks the names, addresses and telephone numbers of all the Government's witnesses, regardless of whether the Government intends to call them at trial, to permit Defendant to contact and question each witness to determine his ability to accurately recount event occurring years earlier.  Marchese Affirmation ¶¶ 19-24.  The Government agrees to provide Defendant with a list of the witnesses it intends to call at trial, but maintains it is under no legal obligation to provide information as to other witnesses interviewed.  Government's Response at 14.  As such, the Government opposes the request insofar as Defendant seeks the identity of Government witnesses whom the Government does not intend to call at trial.  *Id*.

Rule 16 does not require the government to furnish the names of witnesses prior to trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990).  Nevertheless, it is well established that the district courts may, in their discretion, compel the government to identify its witnesses. *United States v. Cannone*, 528 F.2d 296, 301-02 (2d Cir. 1975).  However, it is not an abuse of discretion for the court to refuse to compel such disclosure "in the absence of 'a *specific* showing that disclosure was both material to the preparation of [the] defense and reasonable in light of the circumstances surrounding [the] case.'" *Bejasa, supra*, at 139-40 (quoting *Cannone, supra*, at 301 (emphasis in original)).  Additionally, absent a showing of undue hardship or prejudice, the confidentiality of statements taken in preparation for trial has been upheld.  *International*

21

*Business Machines Corp. v. Edelstein*, 526 F.2d 37, 44 (2d Cir. 1975) (citing cases).

In the instant case, insofar as the Government has indicated its intention of providing Defendant with a list of all witnesses whom the Government intends to call at trial prior to trial, the motion is DISMISSED as moot.  However, Defendant has failed to establish the requisite undue hardship or prejudice to warrant disclosure of the identities of all other Government witnesses.  Accordingly, in the exercise of the court's discretion, the motion is DENIED insofar as it seeks the identity of other Government witnesses whom the Government does not intend to call at trial.


**5.      Bill of Particulars**

Defendant moves pursuant to Fed. R. Crim. P. 7(f) for a bill of particulars. Marchese Affirmation ¶¶ 36-40.  Specifically, Defendant seeks particularization as to (1) the basis for the conspiracy charge and the date on which co-conspirator Grabowski allegedly joined the conspiracy; (2) any overt acts not identified in the Indictment, including dates and locations of and participants in meeting and conversations in furtherance of the conspiracy, or in executing the alleged mail and wire fraud schemes; (3) the dates and times of the alleged overt acts in furtherance of the conspiracy; (4) the basis for the charged mail fraud conspiracy and the dates, times and places, that Defendant caused items to be placed in authorized depositories for mail matter in furtherance of the conspiracy to commit mail fraud; and (5) the basis for the charged wire fraud conspiracy and the dates, times and places that Defendant allegedly utilized wire communications in interstate commerce in furtherance of such alleged conspiracy. Marchese Affirmation ¶ 40.  According to Defendant, such particularization is necessary

to prevent unfair surprise at trial.  *Id*. ¶ 38.

The Government argues in opposition that sufficient details have already been

provided by the Indictment, which is sufficiently detailed to permit Defendant to identify

the nature of the charges against him and that much of the information Defendant seeks

through particularization is otherwise available to Defendant through the open discovery

of all the evidence which the Government has voluntarily provided.  Government's

Response at 19-20.  The Government also opposes any particularization that would be

equivalent to providing Defendant with its legal theory of the case.  *Id*. at 21-22.  The

Government further argues that particularization requirements are "narrow" for cases

like the instant case involving conspiracies. *Id*. at 22-23.

Under Fed.R.Crim.P. 7(f), the court is authorized to direct the filing of a bill of

particulars as justice requires.  Whether to grant a request for particularization is within

the sound discretion of the district court.  *United States v. Davidoff*, 845 F.2d 1151,

1154 (2d Cir. 1988).  A defendant may seek particularization to identify with sufficient

particularity the nature of the charges against him, thereby enabling the defendant to

prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy if he

should be prosecuted a second time for the same offense.  *Wong Tai v. United States*,

273 U.S. 77 (1927); *United States v. Bortnovsky*, 820 F.2d 572 (2d cir. 1987); *United

States v. Taylor*, 707 F.Supp. 696 (S.D.N.Y. 1989).  The decision as to whether to direct

further particularization is within the discretion of the district court.  *United States v.

Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).  If the discovery material sought by the

defendant is provided in the indictment or in some acceptable alternate form, no bill of

particulars is required.  *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (citing

*Bortnovsky, supra*).

The test as to whether to order particularization is "whether the information sought is necessary, not whether it is useful." *United States v. Matos-Peralata*, 691 F.Supp. 780. 791 (S.D.N.Y. 1988). Courts will not order particularization where the government has provided the information requested either "in the indictment or some acceptable alternative form." *Bortnovsky, supra*, at 574; *Feola*, *supra*, at 1133. A bill of particulars should only be required "where the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *Feola, supra*, at 1132. Further, "[a]cquisition of evidentiary detail is not the function of the bill of particulars." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.), *cert. denied*, 498 U.S. 906 (1990)(denying request for bill of particulars identifying unindicted alleged co-conspirators referred to in indictment as 'known and unknown' on the basis that such information was unnecessary to advise defendants of the specific acts of which they were accused). As a bill of particulars limits the government's proof at trial, a request should not be granted where the result would be to unduly restrict the government's ability to present its case. *United States v. Massino*, 605 F.Supp. 1565 (S.D.N.Y. 1985).

In the instant case, Defendant fails to specify any need for the particularization requests, as is his burden. *United States v. Payden*, 613 F.Supp. 800, 817 (S.D.N.Y.) (citing *United States v. Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962)). Rather, Defendant makes only bald, conclusory assertions that such information is necessary to prevent surprise at trial. Marchese Affirmation ¶¶ 38. This assertion simply is devoid of the specificity necessary to substantiate the requested particularization. Nor does Defendant dispute the Government's assertion that it has voluntarily provided

24

Defendant with open discovery from which the information Defendant seeks can otherwise be obtained.  Moreover, given the nature of the charges pending against Defendant, *i.e.*, that Defendant conspired to commit mail and wire fraud, a plain reading of the Indictment establishes that it sufficiently informs Defendant of the nature of such charges, including the dates of each check or wire involved in the overt acts in furtherance of the conspiracy, the amount involved in each overt act, the category of payment and the corresponding invoice number.  Defendant thus does not need the requested information to prepare his defense; rather, ordering the Government to provide further particularization in accordance with Defendant's request may force the Government to reveal evidentiary detail beyond the purview of a bill of particulars. *Torres*, *supra*, at 234.

Accordingly, Defendant's request for a bill of particulars is DENIED.


**6.    Government's Request for Reciprocal Discovery**

Pursuant to Fed.R.Crim.P. 16(b), the Government demands reciprocal discovery and inspection from Defendant, including permission to inspect and copy or photograph any books, papers, documents, photographs, tangible objects which are within Defendant's possession, custody or control and which Defendant intends to introduce as evidence in chief at trial.  Government's Response at 24.  The Government also seeks disclosure of all results or reports of physical or mental examinations, specific tests or experiments related to the case, as well as written summaries of any expert witness testimony which Defendant intends to present at trial.  *Id.* at 24-25.  Finally, the Government requests Defendant disclose a written summary of expert witness

testimony Defendant intends to use under Fed. R. Evid. 702, 703 and 705.  *Id*. at 25.

Defendant has not responded to this request.  To the extent that Defendant is in

possession of the items covered by this request, the motion is GRANTED.


## CONCLUSION

Based on the foregoing, Defendant's motion (Doc. No. 31) should be GRANTED

in part, DENIED in part and DISMISSED in part; the Government's request for

reciprocal discovery (Doc. No. 25) is GRANTED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      October 16, 2006
            Buffalo, New York


**PURSUANT TO FED. R. CRIM. P. 58(g)(2)(A), ANY NOTICE OF APPEAL OF THIS**

**DECISION AND ORDER MUST BE FILED WITH THE CLERK OF THE COURT**

**WITHIN TEN (10) DAYS OF ENTRY.**